## WILKES-BARRE v. WYOMING HISTORICAL SOC.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY.

Argued April 14, 1890—Decided May 12, 1890.
[To be reported.]

1. When, to remove doubts as to a borough's title to and right to dispose of land, a statute has been passed, confirming the title and conferring upon the borough power to sell lots out of the land, a provision therein that, before making any such sales, the borough shall convey a lot of a certain size to a historical society, is a valid exercise of legislative power.

(a) By § 5, act of April 5, 1870, P. L. 891, the borough of Wilkes-Barre was directed to convey to a historical society a lot fronting not less than 30 feet on a certain street, "for the erection of a hall for the use of said" society. By resolution reciting the act, the borough council directed the conveyance to the society of land fronting 100 feet on said street, being lots 46, 47, 48 and part of 49.

(b) The resolution directed the embodying in the conveyance of a condition that a building be erected by the society within two years. The proper officers executed and delivered to the society a conveyance, reciting the resolution, stating that lot 46 represented the minimum of 30 feet specified in the statute, and subjecting the other lots conveyed therein to the condition prescribed by the resolution:

2. The mere statement in the statute that the lot was to be conveyed "for the erection of a hall," etc., imposed no condition upon the title directed to be conveyed, and did not make it dependent upon the application of the land by the society to the use expressed: Methodist Church v. Public Ground Co., 103 Pa. 608; and the borough had no authority to do so by the conveyance.

3. For that reason, and also because, construing the resolution in the light of the interpretation placed upon it by the borough officers in making the deed, there is no essential conflict between the terms of the resolution and those of the deed, the society took an absolute title, in fee-simple, to lot 46, which it could hold, sell and convey, free from any condition whatever.

4 Said society being a corporate body, the omission from the conveyance to it of the words, "successors and assigns," did not prevent the passage of a title in fee-simple; nor did it imply any condition that the land granted should be held and used for the purpose named in the statute and resolution under which the deed was made.

Before Paxson, C. J., Sterrett, Green, Williams and McCollum, JJ.

No. 154 January Term 1890, Sup. Ct.; court below, No. 218½ March Term 1889, C. P.

On March 4, 1889, the city of Wilkes-Barre brought ejectment against the Wyoming Historical and Geological Society, for a lot of ground fronting 30 feet on Washington street, Wilkes-Barre, being "lot No. 46 on plot of the Old Grave-Yard." The defendant pleaded not guilty.

By agreement, the cause was referred, under local acts applicable to Luzerne county (perhaps, act of April 6, 1869, P. L. 725, and its supplements), to *Mr. S. J. Strauss*, as referee, who made the following findings of fact:

Prior to 1869 "the trustees for the proprietors of Wilkes-Barre," a corporation with full power to convey its lands under the act of April 2, 1831, [P. L. 367 ?] were the owners of the "Old Graveyard" in the borough of Wilkes-Barre. On February 9, 1869, the borough of Wilkes-Barre became by contract the owner of an equitable interest in this land. By the act of April 5, 1870, P. L. 891, the equitable title of the borough was confirmed, and the trustees were authorized (though it is not certain that they did not have the power before) to complete the borough's ownership, by a conveyance in fee-simple of the legal title to all the public land of Wilkes-Barre township lying in the borough. The act of 1870 authorized the borough authorities to sell the "Old Graveyard" in lots, but by the fifth section required that, before any sale of lots could be made to others, the borough should convey a lot not less than thirty feet in front on Washington street, and one hundred feet deep to the defendant, "for the erection of a hall for the society."

On January 21, 1871, the borough council by resolution duly adopted, directed its officers "to convey to the Wyoming Historical and Geological Society one hundred feet front on Washington street by one hundred and eight and a half feet deep, consisting of lots numbers 46, 47, 48 and part of lot 49 of said allotment, for the purposes as required by act of assembly approved 5th of April, 1870, relating to sale of Old Graveyard, upon condition to be embodied in the conveyance that the society will erect thereon within two (2) years from January 1st, 1871, a building costing not less than forty thousand

dollars ($40,000)." One week later, January 28, 1871, the borough officers, without any authority except as it came to them from the resolution just quoted, delivered the deed under which the defendant claims title to the land in controversy.

The deed after quoting the resolution correctly and describing the land, embodies the following conditions:

"It being hereby expressly understood and provided that lot 46, hereby conveyed, represents the minimum quantity of 30 feet in front on Washington street, which the party of the first part was required to set off and convey under the provisions of said act of assembly of 5th of April, 1870; and that the conveyance of lots 47, 48 and part of 49 is made upon the express provision and condition that the said party of the second part, shall, within two years from the first day of January, 1871, to wit, on or before the 1st of January, 1873, erect upon the premises hereby conveyed a building costing not less than forty thousand dollars, and that upon failure by the said party of the second part to erect such building within the time specified then and in that event this conveyance to be and become absolutely void as to lots 47, 48 and 49, and the title thereto to revert to the grantors at once, thereupon to be held by them as though this conveyance had never included said lots."

No valuable consideration moved from the Wyoming Historical Society, the defendant, to the grantor, for this conveyance. No formal possession was ever taken of the land in controversy, nor was any improvement ever made thereon. The defendant has by written contract agreed to convey lot 46 to M. B. Posten for $4,500, and has accepted $1,000 down payment. The defendant does not intend, and could not now if it would, erect its hall on said land. The defendant is a private corporation duly chartered under the laws of this commonwealth. The city of Wilkes-Barre is the present owner of any title which the borough had in this land. After the conveyance by the borough to the defendant, the borough conveyed other lots carved out of the old graveyard, and otherwise proceeded under the provisions of the act of April 5, 1870. The borough of Wilkes-Barre in a resolution of council passed March 11, 1871, recited the conveyance to the defendant as having been made under the resolution of January 21, 1871, and directed that certain

lots of the old graveyard should be changed in width, among them lots 47, 48 and 49, but not lot 46. The deed to the defendant does not contain the words " and its successors," while the printed words, " its assigns," are crossed out.

Upon the facts found by him the referee stated his opinion as follows :

1. Was the act of April 5, 1870, constitutional? In connection with this question, the plaintiff requests the referee to find that at the date of the approval of the act, the borough of Wilkes-Barre was the owner of the land, and that the land was private property. These facts cannot be found without qualification or explanation.

—After stating that at the time of the passage of the act of 1870, the legal title to the old graveyard was held by " the trustees for the proprietors of Wilkes-Barre " for public use as a burial place, to which use it had previously been dedicated, and that the borough had then an equitable interest under a written executory contract with the trustees ; that the validity of its title and its power to sell the land or put it to any new use was doubted on all hands and the act of 1870 was procured to remove the doubt ; that the property was recognized as public land by the act of April 2, 1831, P. L. 367, and that it did not lose its public character by the change of ownership from the trustees to the borough, the referee continued :

A cemetery, dedicated as this one was, is, moreover, as much public property as the highway, the town hall or a public school. This has been recognized in Pott *v.* School Directors, 42 Pa. 132. In some cities the maintenance of cemeteries has been made a municipal duty : Dillon on Mun. Corp., §§ 305, 306. But all property of a municipal corporation is in a general sense public, whatever may be its use, though it may sometimes be spoken of as the private property of the corporation. As to the citizens it is public ; as against all other corporate or governmental authority it is private ; not to be diverted from the municipal ownership, possession or use to other non-municipal, even though public, uses without compensation ; not to be given by the power of the legislature, without the consent of the municipality, over into the hands of private owners for private purposes even for compensation. And this principle

will furnish the touchstone by which we may ascertain whether the act of April 5, 1870, is constitutional or not.

The Wyoming Historical and Geological Society is a private corporation. A transfer to it of this land would therefore have been a transfer for a private use. In Palairet's App., 67 Pa. 486, Judge SHARSWOOD stated the rule: " It has become then a fundamental axiom of constitutional law, not only in this, but in every other state in the Union, that the legislative power cannot, either directly or indirectly, without the consent of the owner, take private property for merely private use with or without compensation." It is of no profit to multiply citations of authorities to the same effect. Nowhere has the legal principle been more plainly expressed. While the cases in which the question has been before the court for adjudication have been those in which the rights of individuals and of private corporations were concerned, there would appear to be no good reason why it should not apply to protect the title of a municipal corporation against arbitrary confiscation by the legislature.

To what extent these corporations may be under legislative control it is not necessary to discuss at greater length. The act of April 5, 1870, § 5, will, by this rule, be found to be constitutional. It did not of itself convey the land to the defendant, nor did it take the land out of the control of the owner by creating a trustee, who, whether the owner consented or not, was directed to sell the land, a method that had been condemned in the cases, Kneass's App., 31 Pa. 90, and Ervine's App., 16 Pa. 264. Here the legislature directed that before the owner should have the benefit of the special statute, he should first make a conveyance of a portion of the land affected by the statute. The requirement may have been arbitrary and open to criticism, but we need not say that it was necessarily so. In fact, the presumption is that the act of 1870 was passed not only by consent of, but at the active instance of the borough of Wilkes-Barre. " The respect which is due to the legislative department of the government justifies the presumption that an act authorizing a sale of land and directing the proceeds to be distributed among parties, is passed at their instance. Hence a conveyance under such authority is prima facie evidence of a good title in the vendee, against all persons claiming under the persons for whose benefit the sale purports to be

Referee's Report.

made : Estep v. Hutchman, 14 S. & R. 438 ; Kneass's App., 31 Pa. 91.

The plaintiff contends that the deed is void because a municipality cannot give its property away for private use. No authority is cited to sustain the position, but it is suggested that " the mere statement of the proposition is an establishment of it." The borough, it is said, is simply at most a trustee, with power to sell and apply the proceeds for the benefit and purposes of the municipality composed of the incorporators. Therefore, when the municipality attempts to donate or give away land belonging to it, it acts ultra vires and no title passes.

It has been said by the most eminent writer on the law of municipal corporations that the incidental right to alienate or dispose of the property, real or personal, of the corporation, of a private nature, is possessed, unless restrained by charter or statute ; they cannot of course dispose of the property of a public nature, in violation of the trusts upon which it is held ; nor of public squares, streets and commons : Dillon on Mun. Corp., § 445. Having this implied power, the consideration by which the corporation is moved to make a conveyance might very naturally be one to be weighed in the discretion of its governing bodies, but not to be measured or fettered by some judicial tribunal. Like all power that depends for its exercise on the discretion of the men in whom confidence has been lawfully reposed, it may be unwisely exercised. But we need not go so far in this case as to assert that a conveyance may (without express authority, but upon implication only) be made by a municipal corporation for no consideration. Here we may assume that if the power to make a gift has not been expressly granted by legislation, the proposition for which the plaintiff contends may be the legal rule.

That the legislature may authorize a municipal corporation to donate its lands for worthy purposes cannot be doubted. A municipal corpo ation is but one of the instruments of government : Philadelphia v. Fox, 64 Pa. 181. It is established for public purposes exclusively,—for the administration of civil or local government; subject to the constitutions, national and state, the legislative power over it is supreme and transcendent : Dillon on Mun. Corp., § 30. Whatever power the legis-

lature can itself exercise in affairs of the state, it may always, keeping within the constitution, authorize the city to exercise in municipal affairs.

The act of April 5, 1870, expressly commanded the borough of Wilkes-Barre to make the deed under which the defendant claims. The defendant is a *private society created from no motive of pecuniary profits to its members.* Its object is to stimulate the study of local history and geology, an object wholly educational. Such an organization is not so alien to the general purposes of municipal corporations and of public education that the legislature may not properly provide for its encouragement. It required an amendment to the constitution, Amendment 1857, § VII., to prevent the legislature from authorizing municipal loans to or investments in any corporation.

The act of 1870 having been found constitutional, a deed made in pursuance of it is valid.

2. " The grant of lot number 46 created only an estate upon condition. The condition has been broken and the estate forfeited." This is the plaintiff's second proposition. Let us examine it.

The condition on which the plaintiff alleges the defendant took title, was that the grantee should build upon the land a hall for its own use. It is needless to consider whether this condition was merely, in the language of the act of April 5, 1870, " for the erection of a hall for the use of the Wyoming Historical and Geological Society; " or, whether it was, according to the more specific resolution of the town council of January 21, 1871, that the said society shall erect thereon " within two years from January 1, 1871, a building costing not less than forty thousand dollars." In either event the condition has been undoubtedly broken by the defendant, who has aliened without making the required improvement.

The sole question remaining to be determined is whether the conveyance was lawfully made upon the condition alleged.

A decision of this may be arrived at by considering: (*a*) Does the deed to the defendant upon its face impose a condition? (*b*) If not, should the deed be read as if the resolution of the council had been obeyed by the officers who executed it, and as if it contained the condition? (*c*) If so, is the condition consistent with the legislative command contained in § 5, act of April 5, 1870?

Referee's Report.

(*a*) Does the deed upon its face impose a condition on lot
46 ? . . . . .

If this deed, thus drawn, imposes the condition on lot 46, it
is by force of some rule of law which is strong enough to over-
ride the language of the instrument and the clearly expressed
purpose of the scrivener.

The technical words, " upon condition," "provided that," "so
that," " if," etc., are not necessary to make a condition ; neither
do they by their presence always serve to create one : Paschall
v. Passmore, 15 Pa. 307; 1 L. C. on Real Prop., 123.    But, in
order that a condition may arise, the words relied on must not
only be such that they of themselves create it, they must be so
placed in the deed that they qualify or restrain the grant:
Laberee v. Carleton, 53 Me. 213 ; 1 L. C. on Real Prop., 124.
A mere recital in the deed that it is made for a certain consid-
eration or purpose, is not sufficient to make the grant conditional.
Therefore, in Perry v. Scott, 51 Pa. 119, a deed from father to
son, to take effect on the father's death, in consideration of love
and affection and that the son should live with the father and as-
sist him, where the son refused to live with the father, was held
after the father's death to convey the land ; and, in Methodi
Church v. Public Ground Co., 103 Pa. 608, a deed for a lot of
land " to be for a reservoir " conveyed a fee-simple; and the
latter case is cited approvingly in Packard v. Ames, 16 Gray 327,
where a conveyance " to have and to hold to each and every
person who may become lawful owners of a pew in the meet-
ing house to be built and erected thereon," was decided to be
not a grant on condition that a meeting house shall be erected
and maintained on the land conveyed.    By the light of these
authorities it is clear that the condition in the deed does not
upon its face apply to lot 46.

(*b*) Should the resolution of January 21, 1871, control the
deed and virtually reform it ?

The officers of a municipal corporation can only bind the
corporation when they act within the scope of the authority
reposed in them : Dillon on Mun. Corp., § 450, and note ; Far-
mers Bank v. McKee, 2 Pa. 318.    A deed executed as this one
was, by the president and secretary of the council and attested
by the corporate seal, is prima facie [a corporate act].

The officers instructed by resolution to execute a deed act

ministerially; no discretion is vested in them. The legislature by the act of 1870 authorized the borough, not its officers, to make this deed. It was for the borough in its corporate capacity to decide whether it would consent to the act of 1870. In fact as we have already seen, the power to dissent from the requirement of the fifth section, was necessary to give it constitutionality and validity. True, unless the borough consented, it could not reap the benefits of the remaining provisions of that statute, but whether they were of sufficient value to be accepted at the expenses imposed by the fifth section, was the very thing to be ascertained by the action of the council; and only the council could direct the deed to be made to the defendant.

While, therefore, a deed of the corporation duly executed is prima facie its act, when it is apparent that the officers who made it have gone beyond their instructions one of two possible consequences results: Either the deed is made by the officers ultra vires and is therefore void, or, in an action of ejectment like this, it might be within the province of the court to consider the deed as reformed to correspond with the authority under which it was made. An ejectment has in Pennsylvania been more than once declared to be an equitable action, and it would be in strict accord with the principles of existing practice, as well as in the interest of speedy justice, to treat the deed as reformed. In the litigation now before the court, the effect upon the defendant's case would be exactly the same, in view of the referee's final conclusion of law, whether the deed is declared null, because executed ultra vires, or whether it is reformed to incorporate a condition that must defeat the grant.

It is urged by the defendant that, even without a deed, the borough of Wilkes-Barre having sold the old graveyard in lots, by virtue of the act of 1870, the title would be in the defendant; the mandate of the statute to convey became obligatory, it is argued, as soon as the borough accepted the advantage offered by the act; " the law regards that as done which ought to be done." The act contemplates a conveyance, and a conveyance was made. Without it, the defendant could never have set up a claim to 46, or to any other specific lot. That the land was conveyed in a manner unauthorized by the borough was as much the negligence of the defendant who ac-

cepted, as it was the wrong of the borough officers who made the deed. Certainly the negligence of the defendant cannot result in a reward to the defendant, nor can the wrong doing of its officers be visited on the head of the borough which was neither negligent nor in the wrong. Whatever title the defendant could acquire must arise jointly from the statute, the resolution and the deed. Neither, unsupported by the other, would be sufficient.

(c) But it is claimed by the defendant that the resolution, in so far as it authorized the deed, was valid under the statute, but in so far as it imposed a condition it was unreasonable and unsupported by the statute; and this gives origin to the final question in the case: Is the condition consistent with the legislative command in § 5, act of April 5, 1870?

That section commands that the land shall be set off and conveyed to the defendant "for the erection of a hall for the use of said" society. It was not an unreasonable construction of the statute when the borough council undertook to compel the defendant to erect the hall which the legislature contemplated. Obedience to the statute was the duty of the borough if it desired the advantages of the law; obedience to the statute was none the less the duty of the defendant. While the statute contained no direct injunction on the defendant to erect the building, there is no conceivable reason why the defendant should be excused from erecting it. It is necessarily implied that if the society accepts as a gratuity from the public, land "to erect a hall for the society's use," it will in good faith carry out the object of the gift. While, as we have seen, a gift in these words alone would not operate as a condition, it cannot be said that the same technical rule would be applied in construing a statute which authorizes the gift to mean thereby to prohibit a conveyance in apt words calculated to enforce the legislative intent. When the legislature directed that the land which then belonged to Wilkes-Barre should be conveyed to the defendant for the purpose expressed, it was undoubtedly because the erection of a building devoted to historical and geological research would confer a commensurate benefit on the community whose property was affected. There is nothing in the language of the statute to indicate that the legislature intended to pour a sum of money into the society's treasury

from the public's possessions without any return for the benefi-
cence.   In addition to all this, attention should be called to
the fact that, at the time, the defendant deemed the condition
authorized by the resolution to be just and reasonable ; for the
deed recites, after setting forth the action of the borough at
length, that the said proposition was duly accepted by the
party of the second part, by a resolution passed at a meeting
of said society held on January 22, 1871.

A resolution of the borough council passed in March, 1871,
was offered in evidence by the defendant, whereby the report
of a committee was adopted which recommended that the bor-
ough engineer remodel the draft of the Washington and Fell,
street allotment of the old graveyard to conform with the con-
veyances to the Wyoming Historical and Geological Society,
executed under " resolution of January 21st last," by changing
the widths of, inter alia, lots, 47, 48 and 49.   Lot 46 was not
mentioned in this document.   It is argued from this that the
borough had knowledge of, and by implication ratified, the deed
to the defendant, and that the absence of lot 46 from the reso-
lution, shows that the borough did not consider itself interested
in that, but knew it to have been conveyed unconditionally.

The resolution carries no evidence upon its face that the
borough council had any notice of a failure to write the deed
according to instruction given January 21st; on the contrary,
it is referred to as having been made under the resolution of
January 21st. . . . . .

The referee reports the following conclusions of law :

1. Section 5, act of April 5, 1870, above referred to, is con-
stitutional.

2. By virtue of § 5, act of April 5, 1870, the borough of
Wilkes-Barre was authorized to make this conveyance.

3. The duty of the officers of Wilkes-Barre borough, in
making and delivering the deed under which the defendant
claims ownership, arose from and was limited by the resolution
of January 21, 1871.

4. The resolution of January 21, 1871, was in reasonable
compliance with the fifth section of the act of April 5, 1870,
and the condition provided by that resolution was fairly in
performance of the requirement and in completion of the pur-
pose of the legislature.[2]

### Opinion of Court below.

5. In so far as the deed varied from the instructions contained in the resolution of January 21, 1871, it was executed by the officers of the borough ultra vires, and the title depending upon it, for the land in controversy, would fail.

6. In so far as the deed can be equitably reformed by reading it with the condition of the resolution of January 21, 1871, incorporated, it imposed a condition upon the ownership of the land by the defendant which has been broken, whereby the title has been forfeited.[3]

Upon the whole case the referee finds that the plaintiff is entitled to recover the land described in the writ.

—The referee accordingly directed that judgment be entered in favor of the plaintiff for the land described in the writ, unless exceptions were filed, etc.

The defendant filed exceptions to the report, alleging that the referee erred, inter alia :

3. In not finding as a fact that the borough recognized and by implication ratified the deed.[1]

4. In his fourth conclusion of law.[2]

6. In his sixth conclusion of law.[3]

7. In not finding that the deed as written was a valid conveyance.[4]

8. In not finding that the defendant had title to the land in suit, without condition.[5]

9. In not finding that judgment be entered for the defendant.[6]

After argument, the court, RICE, P. J., disposed of said exceptions in the following :

" After a careful examination of this case we conclude that the questions raised have been adequately discussed and considered, and correctly decided by the referee. We cannot profitably add anything to what he has said. Therefore, for the reasons given by the learned referee, the exceptions are overruled, the report is confirmed, and judgment is directed to be entered thereon in favor of the plaintiff for the land described in the writ."

—Thereupon the defendant took this appeal, specifying that the court erred :

1–6. In not sustaining the defendant's exceptions.[1 to 6]

7. In confirming the referee's report and directing judgment for the plaintiff.

*Mr. Henry A. Fuller*, for the appellant:

1. The legislative compulsion upon the borough to convey to the defendant, was constitutional. In ratifying the borough's title to the old graveyard, and providing a mode for its alienation, by the act of April 5, 1870, P. L. 891, the legislature had power to make the giving of a portion of the land to this society a condition precedent to the enjoyment of the privileges conferred upon the borough, and having accepted it, the borough must be held to have assented to the condition. Its title was doubtful prior to that act, or, at least, the land was inalienable, because devoted to the purpose of a park or square by the act of April 13, 1867, P. L. 1236, and the ratification of the title, and the making of it alienable constituted sufficient consideration to sustain the requirement to convey.

2. But, even conceding lack of power in the legislature to compel the conveyance, the defect is cured by the borough's deed. The objection that the deed, as a gift, is ultra vires, is not tenable, because the general borough act of April 3, 1851, P. L. 320, gives power to convey without restriction, and because a borough may receive power from the legislature to make a gift, and this gift, if such it was, is expressly authorized by the act of 1870. The deed did not convey an estate upon condition in lot No. 46. If a condition exists, it was created either by the statute, the resolution of council, or the deed. The statute did not impose any. The statement therein that the lot was for the erection of a hall, merely set forth the motive prompting the grant, and did not operate as a condition, or to reduce the estate to a base fee: Packard v. Ames, 16 Gray 327; First M. E. Church v. Public Ground Co., 103 Pa. 608.

3. Nor did the resolution impose a condition. Assuming that the statute is constitutional, the council had no power to impose upon the minimum required to be conveyed the condition recited in the resolution; because the statute authorized no condition whatever, and because a condition that an educational society, without capital, should erect in two years a building costing $40,000, is unreasonable. There is no evidence that the society accepted the resolution, and the referee does not so find. The recital in the deed that it had been accepted, is not competent evidence against the society. It ac-

cepted the deed, not the resolution. The construction of the resolution, however, should not be such as to impute an intention to exceed the power conferred by the statute and disregard its directions; and, without violence to its terms, it may be construed as imposing the condition only upon the excess of land over and above the minimum of 30 feet, precisely as the officers who drafted and executed the deed did construe it.

4. The deed expressly exempts lot No. 46 from the condition. It is true, it does not contain the words, successors or assigns, but as neither is necessary to vest a fee in a corporation, their absence cannot create a condition. The statute, however, is sufficient to sustain the defendant's title, without any assistance from either the resolution or the deed, the borough having accepted the benefits of the act, and exercised the power of sale conferred by it. The referee assumes that the defendant's title is incomplete without the deed, because the statute employs the word "convey" and does not individuate the particular land to be conveyed. But this position would enable the borough to take advantage of its own wrong in neglecting to make a valid conveyance. Law, not less than equity, will in this case regard that as done which ought to be done, and, by selling other lots, the borough has sufficiently individuated lot 46 as the one to which the defendant is entitled.

*Mr. William S. McLean,* for the appellee:

1. The legislature had no power to compel a conveyance to the defendant, which was simply taking the property of the borough and giving it to a private corporation without compensation. The borough received nothing by the act of April 5, 1870, P. L. 891. The owners of the land from whom the borough purchased it, had power to sell it under the act of April 2, 1831, P. L. 367, and the borough had power to purchase it, and after so doing to make sale of it, under the act of April 3, 1851, P. L. 320. It must be presumed that the purchase was made for the purposes of the borough: Dillon on Mun. Corp., §§ 432, 433; and the purchase and control of this burial ground was fairly within the scope of its powers: Kincaid's App., 66 Pa. 423; Craig v. First P. Church, 88 Pa.

Opinion of the Court.

52. A municipality's property cannot be taken away without compensation, even with its consent, as it is held in trust: Terrett v. Taylor, 9 Cranch 43; 2 Kent's Com., 305; Dartmouth College Case, 4 Wheat. 518; Cooley's Const. Lim., 238; Grogan v. San Francisco, 18 Cal. 590.

2. The act of 1870 being unconstitutional, the borough had not the power to give away the land in question to a purely private corporation. Such a gift is a fraud which the courts would enjoin: Dillon on Mun. Corp., §§ 729, 730; and is ultra vires: Idem, § 381. But, independent of the questions as to the validity of the act of 1870, and the power of the borough to make a gift, the plaintiff is entitled to recover, because either the deed must be treated as reformed, so as to accord with the resolution of council, or else it is ultra vires. The only power the borough officers had to make and deliver the deed flowed from the resolution. Without such special authority in them to make it, the deed would be null and void: Merrill v. Burbank, 23 Me. 538; Clark v. Pratt, 47 Me. 55; Dillon on Mun. Corp., § 451, note 2. There is no evidence of its ratification by the council, and if not controlled by the resolution, it is void. The resolution, imposing a reasonable condition, which merely carried out the legislative intention that the land should be occupied by the society, for its purposes, must be read into the deed. Moreover it was recited at length therein. By its very terms, the statute alone vests no title in the defendant.

OPINION, MR. JUSTICE GREEN:

We quite agree with the learned referee and court below that the act of 5th April, 1870, was a valid exercise of legislative power, and entirely free from the objection that it is unconstitutional. The reasons for thus holding are so satisfactorily set forth in the report of the referee that we deem it unnecessary to repeat them here. But we find ourselves unable to agree that the defendant's title is void for breach of condition. The deed from the burgess and town council of the borough of Wilkes-Barre to the defendant is the deed of the corporation itself, and not of its officers, executed under the corporate seal and with all due formalities, and it passed to the defendant the fee-simple title to the land in question, if the corporation had

the lawful power to convey such a title.   The omission of the words, successors and assigns, does not defeat the title.   It is true that the resolution of council did impose upon the defendant the condition for the erection of a building to cost not less than forty thousand dollars, and, in general terms, made that condition operative upon the lot No. 46 as well as upon the other lots named in the deed.   But when the deed was executed and delivered to the defendant the lot No. 46 was set free from this condition, and it was applied only to the other lots.

Passing by questions of subsequent ratification and consent to the title actually conveyed by the deed, it is only necessary to recur to the fifth section of the act of 1870, to ascertain the authority upon which the defendant was entitled to have a conveyance of the lot in question from the borough.   The previous sections of the act had conferred upon the borough power to make sale of lots in the old graveyard, and convey the same in fee-simple, upon a vote of the people to that effect; and then, in the fifth section, the act provided that, "before any sale of the lots provided for by this act shall be made, a lot not less than thirty feet in front on Washington street, and one hundred feet deep from said street, shall be set off and conveyed by the burgess and town council of the borough of Wilkes-Barre to the Wyoming Historical and Geological Society, for the erection of a hall for the use of said Wyoming Historical and Geological Society."   The first section ratified a contract made in 1869 between the borough and the trustees of the borough in relation to the old graveyard, and a certain lot of twenty-five acres which had been purchased outside the borough limits for cemetery purposes, and as to which some confusion and doubt had arisen touching the rights and powers of the contracting parties, and authorized conveyances to be interchanged according to the terms of the contract.   The powers conferred by this legislation were exercised by the parties, and the borough, in execution of the condition imposed by the fifth section, passed a resolution on January 21, 1871, to convey to the defendant not merely a lot of thirty feet by one hundred, but a lot of one hundred feet in front and one hundred and eight and one half feet in depth, consisting of lots number 46, 47, 48, and part of 49, but upon condition that the defendant should erect thereon within two years a building to cost not less than forty

thousand dollars.    On the 28th of January, 1871, the deed was
executed, but with the condition applying only to the lots 47, 48,
and 49, and expressly stating that the lot 46 represented the
minimum quantity of thirty feet front which the borough was
required by the act to convey to the defendant.

The question arising is, whether the condition in regard to
the erection of the building applies to the lot 46.    By the
terms of the deed, it does not.    By the terms of the act, the
lot was to be conveyed without consideration, and as the
borough accepted the benefits of the law, it must be held to
have agreed to perform its conditions.    It was not at liberty,
therefore, to impose any more onerous conditions or terms
upon the grantee than such as were authorized by the act.
There was no authority conferred by the act upon the borough
to exact the erection of a building to cost forty thousand dol-
lars, and doubtless the borough authorities so understood,
because they granted three times as much land as the act di-
rected, and annexed the condition to the whole grant.    The
resolution of the council does not say explicitly that it was in-
tended to subject the lot No. 46 to the performance of this
condition, though the generality of the language used would
require such a construction to be placed upon it.    But the
necessity for holding such a construction is dispelled by their
deliberate act in conveying the land only one week later, in
pursuance of their statutory obligation.    It is perfectly mani-
fest that it was their intention to convey the lot No. 46 free of
the condition, because they expressly say so, and say that the
lot No. 46 represents the minimum quantity required to be
conveyed by the act.    There was no intention to violate the
terms of the resolution, and there was no evidence of any such
purpose.    They were best competent to interpret their own
resolution, and, as a fair reading of it is entirely consistent
with all the terms of the deed, they cannot be considered as at
all in conflict.

The resolution, as can be well understood, was nothing more
than the proper authorization of the conveyance, expressed in
somewhat general language, but reciting explicitly that it was
done in pursuance of the requirement of the act of 1870.    They
certainly did not intend to impose any condition applicable to
lot No. 46 more onerous than was authorized by the act, and

the best proof of the absence of any such intention is found in the language of the deed executed and delivered almost immediately afterwards. The language of the deed would properly be much more formal and ceremonious than the language of the resolution, and, as there is no essential conflict of meaning between the two, and they can be easily reconciled, it is the duty of the courts to read them as the parties undoubtedly intended them. We therefore hold that the terms of the deed are not in conflict with the true meaning of the resolution, but were intended to be used as a literal compliance with it.

As to the use of the lot expressed in the fifth section of the act, it is only necessary to say that it is not restrictive of the grant, and that the title is not dependent upon a literal compliance with the use expressed. The act simply says that the lot shall be conveyed to the defendant "for the erection of a hall for the use of said Wyoming Historical and Geological Society." No condition of any kind was imposed. The passage of the title was not made to depend upon the performance of any terms. No direction was given that a hall should be erected, and no penalty of any kind was established, whether by way of a reverter of the estate or in any other manner whatever, for the non-erection of the hall. In these circumstances, the authorities are uniform and very clear that no conditional estate is given, and the land can be held in fee-simple without performance of the consideration or purpose expressed. A very full treatment of this subject, and quite a full collection of the authorities, will be found in the opinion of this court in the case of Methodist Church v. Public Ground Co., 103 Pa. 608. Mr. Chief Justice MERCUR, in delivering the opinion, said: "A mere recital in the deed that it is made upon a certain consideration will not raise a condition. Where a deed set forth that the estate thereby conveyed was given to the commissioners of a county, in consideration of a county-seat having been located on the premises, it was held that no condition was thereby created that the county-seat should be kept there: Harris v. Shaw, 13 Ill. 456. In Cook v. Trimble, 9 W. 15, it was held that the words 'in consideration of $160 and a comfortable living to be given to the said grantor, his wife and his daughter, during their natural lives,' by the vendee, might create a covenant, but not a condition. In Kerlin v.

Campbell, 3 Har. 500, a conveyance of land for a valuable consideration, in trust for the use of the inhabitants of the county of Delaware, to accommodate the public service of said county, was held not to be defeated on a sale and conveyance by the vendees, whereby the use for the public service ceased. See-bold v. Shitler, 10 Cas. 133, was the case of a conveyance to the commissioners of a county and their successors in office in fee-simple, for the purpose of erecting thereon a court-house, jail, and county offices. The county was subsequently divided, the seat of justice removed therefrom, the land sold and used for other purposes, and the proceeds thereof divided between the two counties. It was held that the title did not revert to the heirs of the original owners," etc. Referring to the writing in the principal case, the Chief Justice proceeded to say : " No restraint was imposed on an alienation of the land. No construction of a reservoir, nor any work on the ground, was required to precede the right to demand a deed. No clause provided for a forfeiture or termination of the estate, in case the land ceased to be used as a reservoir. No right of re-entry was reserved by the grantor on any contingency. No technical word to create a condition was used. No other words were used equivalent thereto, or proper to create a condition. The authorities show that the recital of the consideration, and a statement of the purpose for which the land is to be used, are wholly insufficient to create a conditional estate."

All of the foregoing reflections are applicable to the present case, and they control its decision. We are clearly of opinion that no condition was annexed to the grant of the land which the borough was directed to make to the defendant, and the latter was guilty of no breach which would forfeit its estate. Therefore, if it were true that the borough had really imposed a condition when they made the grant, it would have been void for want of authority. But we are equally clear that the borough had no such purpose, so far as the lot No. 46 was concerned, and therefore they are not entitled to recover the land.

> Judgment reversed, and record remitted, with directions to the court below to enter judgment in favor of the defendant for the land described in the writ, with costs.